GRACE CAMPFIELD et al., On Behalf of Themselves and All Persons Similarly Situated, et al., Respondents, v CESAR PERALES, as Commissioner of the New York State Department of Social Services, et al., Appellants.

First Department, July 11, 1991

## APPEARANCES OF COUNSEL

*Russell Smith* of counsel *(Frankfurt, Garbus, Klein & Selz, P. C.,* attorneys), for respondents.

*Robert M. Hayes* and *Heather R. Evans* of counsel *(O'Melveny & Myers,* attorneys), for respondents.

*Carol Schechter* of counsel *(Robert Abrams, Attorney-General,* attorney), for Cesar Perales, appellant.

*Patrick L. Taylor* of counsel *(Leonard Koerner* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for William J. Grinker, appellant.

## OPINION OF THE COURT

Smith, J.

█ The issue here is whether plaintiffs are entitled to a preliminary injunction directing defendants not to cut off a shelter allowance for children even though those children are in foster care and further directing that the shelter benefits be reinstated on a retroactive basis. We conclude that on this record, plaintiffs are not so entitled. Because this court has been presented with facts which do not support injunctive relief at this time, the order of the motion court should be reversed. This conclusion is without prejudice to further proceedings in the Supreme Court in which plaintiffs may demonstrate the effect of the loss of shelter allowances on the family unit.

Plaintiffs bring this action on behalf of themselves and all others similarly situated. Their basic contention is that because the two child plaintiffs, Shamika Campfield and Kashmer Campfield, were placed in foster care, the shelter allowance provided to plaintiff Grace Campfield was reduced, thus forcing her from the home she shared with her children. Plaintiffs contend further that the practice of reducing shelter benefits to parents and guardians whose children are in foster care is contrary to both Federal and State Constitutions, policy and law. These policies and laws, plaintiffs claim, are designed to protect the family unit.

Respondents, on the other hand, claim that plaintiffs have not made out a case for preliminary injunctive relief and that their policy is mandated by the Federal and State Legislatures. They claim further that, contrary to plaintiffs' assertions, those policies and laws are designed to give assistance to those persons who are at risk of losing their children solely because of the loss or absence of adequate shelter.

The infant plaintiffs in this case were born on January 21, 1980 (Shamika) and December 11, 1983 (Kashmer). Since October 7, 1985 with the exception of a few days, they have lived apart from their mother. The two children had been brought to the city's foster care agency known as Special Services for Children because their mother, plaintiff Grace Campfield, had left them with a baby-sitter for a period of three days. At that time the city was paying $1,500 per month for shelter for Ms. Campfield and her children.

This lawsuit was commenced in 1988 by Grace Campfield who sued on behalf of herself and her two children, Shamika

and Kashmer, and on behalf of all others similarly situated. Plaintiff Coalition for the Homeless is a not-for-profit corporation providing advocacy and services to homeless persons. The defendants Cesar Perales, as Commissioner of the New York State Department of Social Services, and William Grinker, former Commissioner of the New York City Human Resources Administration, were/are responsible for the distribution of benefits under the Aid to Families with Dependent Children Program.

The complaint alleges that after the children of Ms. Campfield had been placed with Special Services for Children, "[b]ecause of inadequate housing conditions at the hotel where Grace Campfield was staying, and because of temporary problems, including acute mental depression, Grace Campfield voluntarily agreed to the temporary placement of her children in foster care in order to give her time to find an adequate place to live." The complaint alleges further that because Ms. Campfield's AFDC benefits were cut off, she has been unable to reunite with her children.

In 1988 plaintiffs sought a preliminary injunction restraining the defendants from cutting off benefits to plaintiffs under the AFDC program where children were in foster care without plans for adoption. They further sought the reinstatement of any benefits already cut off.

In an affidavit in support of the motion for a preliminary injunction, Gretchen Buchenholz, president of an organization providing assistance to the homeless, the Association to Benefit Children, stated that nearly two thirds of the children in foster care were on public assistance. She concluded that the loss of AFDC shelter benefits meant the loss of shelter for a parent or guardian with a consequent longer stay for children in foster care. She concluded that the resulting harm due to separation of family members was irreparable.

Defendants cross-moved to dismiss the complaint on several grounds. Among them was (1) that plaintiffs were not representative of the class, (2) that pursuant to a policy in place since about January 1988, a shelter grant could be continued for a family whose children were in foster care for up to 180 days and (3) a shelter allowance could be increased for a period of up to two months before a child's anticipated return to a parent or relative.

■ Plaintiffs have not established a clear right to relief. A review of the facts here makes clear that the Campfield

plaintiffs are not representative of a class of persons allegedly kept apart as a family because of the denial or termination of shelter benefits once children have been placed in foster care. The record reveals that over a period of time, Ms. Campfield has been fighting alcohol, drug addiction and psychological problems which led to her parental rights being terminated in January 1990 (order of Sparrow, J., Family Ct, Kings County).

■ Second, while the Federal and State policy seeks to foster and strengthen the family, there has been no adequate showing that the current policy of continuing shelter benefits for parents or guardians whose children are temporarily in foster care is insufficient to prevent the breakup of families. This policy includes the continuation of shelter benefits for up to 180 days while a child is in foster care and the reinstatement of shelter benefits for up to two months prior to the return of a child from foster care.

■ The motion court concluded that Federal and State regulations require that shelter allowances continue "as long as there is no termination of parental rights." Contrary to the order of the motion court, an examination of the applicable statutes and regulations reveals the contrary.

First, Federal law, as a general proposition, prohibits the receipt of both AFDC benefits, on the one hand, and Foster Care and Adoption Assistance benefits on the other. Pursuant to the AFDC program and New York State law and regulations, separate allotments are made for shelter, fuel, food and other needs (42 USC tit IV, part A, § 601 *et seq.;* Social Services Law § 131-a; 18 NYCRR part 352). Payments under the AFDC program do not continue when children have been placed in foster care (42 USC § 672 [a]). The Tax Reform Act of 1986 (42 USC § 678, added by Pub L 99-514) made explicit, and retroactive to October 1, 1984, that States receiving AFDC benefits for children could not continue those benefits where children were receiving Federal foster care assistance. Section 678 reads as follows:

"Exclusion from AFDC unit of child for whom foster care maintenance payments are made

"Notwithstanding any other provision of this title, a child with respect to whom foster care maintenance payments are made under this part shall not, for the period for which such payments are made, be regarded as a member of a family for purposes of determining the amount of the benefits of the family under part A [AFDC], and the income and resources of

such child shall not be counted as the income and resources of a family under such part."*

Second, the State regulations which provide for continued shelter assistance to parents or guardians under certain circumstances even when a child is in temporary foster care preclude the conclusion that continued shelter assistance must be provided in all circumstances. Thus, 18 NYCRR 369.4 provides for continued ADC benefits when a child is temporarily absent from a home. This has been interpreted as permitting continued shelter allowances for up to 180 days while a person is in foster care. Section 369.4 (c) reads as follows:

"(c) *Living with a parent or other relative.* (1) Temporary absence from the home or from the district of a child, a grantee, or both, shall not affect a previous determination that the child is living with an eligible relative when it is determined that the parent or relative retains full responsibility for control of the child and the absence cannot be interpreted as a change in the child's home.

"(2) Such absence may include visits to friends or relatives, attendance at camp, enrollment as a resident pupil, *or temporary foster care* [emphasis supplied], either in a family home or in an institution; but the costs of tuition and maintenance in a residence school, or of foster care, shall not be met through the regular ADC grant to the household."

In addition, section 1055 (g) of the Family Court Act has been amended to authorize the payment of shelter allowances to a family or guardian when a child is in foster care so long as

---

* 42 USC § 678 has been repealed and replaced by 42 USC § 609 which reads as follows:

"Exclusion from AFDC unit of child for whom Federal, State, or local foster care maintenance or adoption assistance payments are made

"(a) Notwithstanding any other provision of this title (other than subsection (b))—

"(1) a child with respect to whom foster care maintenance payments or adoption assistance payments are made under part E or under State or local law shall not, for the period for which such payments are made, be regarded as a member of a family for purposes of determining the amount of benefits of the family under this part; and

"(2) the income and resources of such child shall be excluded from the income and resources of a family under this part.

"(b) Subsection (a) shall not apply in the case of a child with respect to whom adoption assistance payments are made under part E or under State or local law, if application of such subsection would reduce the benefits under this part of the family of which the child would otherwise be regarded as a member."

the plan for the child required by Social Services Law § 409-e includes discharge to said parent or guardian and as long as Federal reimbursement is available.

Nevertheless, while this record is inadequate to support a preliminary injunction, because of the serious nature of the problem, we deem it advisable to make the reversal without prejudice to further proceedings in which plaintiffs may demonstrate the effect of the loss of shelter benefits on the family unit.

Accordingly, the order of the Supreme Court, New York County (Elliott Wilk, J.), entered November 30, 1989, which, *inter alia,* granted a preliminary injunction enjoining defendants from cutting off or reducing benefits under the Aid to Families with Dependent Children Program with respect to children placed in foster care so long as there was no termination of parental rights and further directed a reinstatement of benefits already cut off, reversed, on the law, the facts and in the exercise of discretion, and the preliminary injunction denied, without costs and without prejudice to further proceedings in the trial court.

ROSENBERGER, J. P., ASCH, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered November 30, 1989, unanimously reversed, on the law, the facts and in the exercise of discretion, and the preliminary injunction denied, without costs and without prejudice to further proceedings in the trial court.